

**U.S. Department of Justice**



**FILED**

AUG 1 8 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Kenneth L. Wainstein
United States Attorney

*District of Columbia*

Judiciary Center
555 Fourth St., N.W.
Washington, D.C. 20530

August 17, 2005, ___*FINAL*___

Ms. Mary Petras, Esq.,
Assistant Federal Public Defender
Counsel for Defendant Michael Westley Evans
Office of the Federal Defender
625 Indiana Avenue, N.W., Fifth Floor
Washington, D.C. 20004
(202) 208-7500 (o)
(202) 208-7515 (fax)
Mary_Petras@fd.org

Re: United States v. Michael Westley Evans, Cr. No. 05-0249 (JR) (formerly Mag. No. 05-0331m)

Dear Ms. Petras:

This letter states the "co-operating" plea agreement between your client, Michael Westley Evans, and the United States of America (also called "the Government" or "this office" in this letter). The agreement calls for defendant to co-operate with the government and law enforcement agents in the investigation and prosecution of criminal offenses that others have committed. Based upon your authorization, the Government filed with the Court a criminal information charging the offenses to which defendant is pleading guilty, unlawful conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846;  and, (2) unlawful possession with intent to distribute crack cocaine base within 1000 feet of a school, in violation of 21 U.S.C. § 860. As a result, this matter was calendared as Criminal Number 05-0249 (JR) before U.S. District Judge James Robertson, and has been set for a plea hearing tomorrow morning, Thursday, August 18, 2005 at 11:00 a.m.

At the outset, we note that defendant previously agreed that, having signed an earlier version of this letter, the entire document, and every fact in it, became admissible by itself as evidence against defendant before any grand jury, at any Court hearing involving defendant, and at any trial of defendant. Defendant agreed to this, whether or not the grand jury session, hearing, or trial involved this case or any other case against defendant. Defendant waived any and all rights he might have under the U.S. Constitution, statute, or rule to object to the admission of such evidence against him. The parties made that agreement because the Government agreed to act to get defendant released from detention before he pled guilty under the terms of this agreement. Thus, defendant's agreement

to permit the use of the evidence against him resulted from a freely made bargain with the Government and was a key reason the Government sponsored defendant's release before he pled guilty. The parties further acknowledge defendant is now on parole from a sentence for involuntary manslaughter in the Superior Court of the District of Columbia. To effect our agreement, this Office asked the U.S. Parole Commission (USPC) and the Court Services and Offender Supervision Agency (CSOSA) for authorization for defendant to work as an informant and co-operator with this Office and law enforcement and police agencies. This authorization was granted. As a result, all statements in this letter are admissible in evidence in full as set forth in the preceding paragraph.

The terms and conditions of this plea offer are as follows:

Defendant Evans' Obligations:

1.    Your client, Michael Westley Evans, agrees to admit his guilt and enter pleas of guilty to the following two crimes: (1) conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846, with reference to 21 U.S.C. § 841(a)(1) & 841(b)(1)(A)(i); and, (2) unlawful possession with intent to distribute cocaine base, and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) & 18 U.S.C. § 2.

(a)    The conspiracy offense is a Class A felony, because the crime can be punished by a term of life in prison, 18 U.S.C. § 3559(a)(1). Your client knows he faces the following maximum possible punishment after conviction on his guilty plea:

(A) a term in prison which may not be less than ten years and not more than life;
(B) a fine of not more than $4,000,000;
(C) a term of supervised release -- after the prison term -- of at least five years; and,
(D) a special assessment of $100, 18 U.S.C. § 3013(a)(2)(A).

(b)    The "schoolhouse" crime involving crack cocaine base is a Class B felony, as set forth in 18 U.S.C. § 3559(a)(2). Your client understands that the maximum statutory penalties for a conviction of this "schoolhouse" narcotics offense are "twice the maximum punishment," which is authorised for the crime of unlawful possession of heroin with intent to distribute under 21 U.S.C. § 841(b)(1)(C), and "at least twice any term of supervised release" – after any period in prison. Further, there is a mandatory-minium term of at least one year in prison that must be imposed for the § 860 offense. Thus, the maximum penalties for a guilty plea to the "schoolhouse" narcotics offense are:

(A) a term in prison of at least one year and not more than 40 years;
(B) a fine of not more than $2,000,000;
(C) a term of supervised release -- after the prison term -- of at least six years; and,
(D) a special assessment of $100.

Your client further understands that Section 5E1.2 of the U.S. Sentencing Commission Guidelines Manual ("Sentencing Guidelines" or "U.S.S.G.") permits the Court to levy a fine that is enough to

pay the federal government its costs of any imprisonment, term of supervised release, or period of probation. Your client agrees to pay the $200 special assessment to the Office of the Clerk of the Court for the U.S. District Court for the District of Columbia before the date of sentencing.

(c) Your client knows that any sentence in this case may run consecutively to any other sentence he may have to serve. This is particularly possible because, when police arrested your client in this case, he had been paroled or otherwise released from prison for a sentence he was serving for his 1994 conviction in the Superior Court of the District of Columbia in Cr. No. F-11765-94. That conviction was for a crime in the nature of involuntary manslaughter.

(d) Additionally, your client knows that having two or more convictions for a crime of violence or felony drug offense, including a set-aside conviction, could subject him to the very severe penalties in the career offender statutes and provisions of the Sentencing Guidelines. Defendant acknowledges that he has the (1) manslaughter conviction in F-11765-94; (2) a conviction for unlawful distribution of cocaine in Superior Court case number F-05795-86 in May 1989; and, (3) a conviction for assault with intent to murder in the Circuit Court in Prince Georges County, Maryland, which appears to have occurred in 1986. Therefore, the Government now regards it as highly likely that defendant faces sentencing as a career offender. Further, defendant knows that his guilty pleas mean he could face a very, very long sentence of 30 years or more in prison. Your client knows that receiving such a sentence will not be grounds to withdraw his pleas.

2(a) In entering these guilty pleas, your client understands he is waiving certain rights he has under the U.S. Constitution or by statute. Your client understands that the Fifth Amendment to the U.S. Constitution states that he may not be compelled in any criminal case to be a witness against himself. By entering these guilty pleas, your client knowingly and voluntarily waives this right because he will admit under oath that he did the acts making out the crimes to which he is pleading guilty. Your client also understands that by pleading guilty he gives up his rights:

(1) to have an indictment returned against him after his arrest within the time set forth in the Speedy Trial Act, 18 U.S.C. §§ 3061, *et seq.*;
(2) to be tried by a jury or by a judge sitting without a jury;
(3) to be assisted by an attorney at trial;
(4) to confront and cross-examine witnesses against him;
(5) to challenge the admissibility of the evidence against him;
(6) to testify in his own behalf and to present witnesses at trial in his behalf;
(7) to appeal any rulings by the trial Court in this case, except those concerning whether any sentence was lawfully imposed; and,
(8) to be prosecuted by grand jury indictment on the felony charges to which he is pleading guilty; instead, your client agrees to plead guilty to a criminal information.

(b) By signing this letter below, your client states that he understands the rights that he is waiving, that he has discussed what this means with his attorney, and that he freely waives them, knowing why he is doing so. Your client agrees further that should he ever move to withdraw this guilty plea, whatever other consequences it may have, this paragraph and his signature on this

document may be used to show that he made an informed and voluntary decision to plead guilty.

3(a)    Your client specifically admits certain facts as true when pleading. He agrees that his plea is proof of each fact beyond a reasonable doubt and that the government separately can prove each fact is true beyond a reasonable doubt. These facts are:

Beginning at least in 2004 or earlier, and continuing up until the time of defendant's arrest in mid-June 2005, within the District of Columbia and elsewhere, defendant Evans had an agreement and an understanding with a number of persons, specifically including a person known to the Government and referred to in this proffer by the name "Cromwell" – not his true name -- to buy and sell heroin. Defendant Evans bought the heroin in wholesale amounts from "Cromwell." Evans then turned around and sold it to other persons, some of whom eventually arranged for its sale to individual users and addicts at the street level. Defendant bought heroin from Cromwell after it already had been "stepped on and packaged," meaning diluted from relatively pure heroin into less pure heroin by mixing it with non-narcotic substances. Overall, all of these individuals are persons with whom defendant regularly conspired to distribute or possess with intent to distribute heroin. As part of this conspiracy, at the time of his arrest, defendant regularly had been receiving two or three times a week an amount of heroin sufficient to sell 1000 $10 packets of heroin. Among other street slang terms, such a packet is known as a "billie." Each such packet contains between 115 and 225 milligrams of heroin powder. Thus, defendant agrees that 1000 street billies minimally must contain at least 100 grams of heroin and other substances.

The principal object of the conspiracy was to make money and illicit profits for its leaders, members, and associates from the distribution of heroin and its possession with the intent to distribute. The bulk of the street sales resulting from the conspirators' activities occurred in the areas of the northeast and southeast quadrants of Washington, D.C., generally west of the Anacostia River and south of Gallaudet University. In particular, defendant's activities involved heroin sales in the H Street, N.E., corridor, on the eastern edge of Capitol Hill between Lincoln Park and RFK Stadium and in other areas of Washington, D.C.

During the life of this agreement, the overt acts that defendant, "Cromwell," and others took to further their conspiracy were legion. Thus, only those occurring on the date of defendant's arrest, Tuesday, June 7, 2005, are recounted in this proffer. That evening defendant and others associated with him were engaged in drug-dealing activities centered upon a white truck-type automobile parked in the 1400 block of East Capitol Street, S.E., Washington, D.C. That truck was within 1000 feet of the building and grounds of the Holy Comforter-St.Cyprian Roman Catholic grammar school, which has the address of 1503 East Capitol Street, S.E., as well as the grounds and building of Eastern Senior High School, which has the address of 1700 East Capitol Street, N.E. At about 5:00 that Tuesday evening, sworn officers of the

Metropolitan Police Department's First District vice unit had set up a secret
observation post commanding a vew of East Capitol Street, S.E. An officer in that
observation post saw defendant Evans act in a way that suggested that defendant had
just sold illegal drugs to a buyer. This apparent sale took place at and in the truck.
Officers stopped defendant, among other persons, and then searched the white truck-
type car in which defendant apparently had been seen selling drugs. From the
vehicle, police seized:

> (1) a black bag containing about 120 ziplock packets of suspected
> heroin powder as well as a packet containing a rock of suspected
> crack cocaine base (center console area); the U.S. Drug Enforcement
> Administration's Mid-Atlantic Laboratory analysed the contents of
> the 120 ziplocks and found it to be 11.0 grams of 13% pure heroin
> hydrochloride; an analysis of the contents of the other packet shows
> it to be 3.0 grams of 67% pure cocaine base;

> (2) a black magnetic key holder with 15 ziplocks of suspected heroin
> and seven ziplocks of suspected crack (center console area);

> (3) a black key case with 34 packets containing suspected heroin
> (under right rear passenger seat); and,

> (4) a black pouch with a loaded magnum-type .357 calibre revolver
> (rear of the vehicle).

Some of the suspected heroin was field-tested, and the outcome of the test showed
that the stuff contained an opiate derivative. The suspected crack similarly gave a
sign it contained cocaine.

Defendant acknowledges that he had the heroin and the crack to sell it illegally, that
is, that he possessed each drug with intent to distribute. Further he knew he was
within 1000 feet of the two schools referred to above. The crack seized is a cocaine
base in the form commonly known on the street as "crack." It is an off-white, rocky
type substance, to be distinguished from cocaine hydrochloride powder. It commonly
is made by "cooking" cocaine powder mixed with a liquid and baking soda,
sometimes in a microwave oven or on a stove.

Defendant further acknowledges that the magnum-type "Dirty Harry" revolver seized
from the white truck was possessed in connection with the felony offenses of
possession with intent to distribute of crack cocaine base and the heroin.

As part of this guilty plea, defendant Evans acknowledges as relevant criminal
conduct through his participation in the conspiracy, a quantity of heroin between
three and ten kilograms, which he or his co-conspirators distributed, or possessed

with intent to distribute in the District of Columbia.

(b)    As part of this plea. your client agrees that the U.S. District Judge can determine his sentencing guideline range based upon information not specifically stated in this agreement. This information can include. for example, facts concerning any previous criminal convictions that defendant may have suffered. It may also include specific offense characteristics that could apply to this case or relevant criminal conduct not specifically mentioned in this document. Your client knows that any sentence in this case may be ordered to run consecutively to any other sentence he may have to serve. In any event, your client recognizes that the trial Court only will determine the final sentencing guideline range, usually based upon information contained in a Presentence Investigation (PSI) report that the U.S. Probation Office prepares. Whatever lawful sentence the Court imposes in this case, including a sentence more severe than your client expected when pleading guilty. your client knows that he will have no right to withdraw his plea.

4(a)    Your client agrees not to seek any decreases in his base offense level other than a three-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility only, which the Government agrees he should receive. The government now agrees that your client should receive a three-level reduction for acceptance of responsibility. although that position could change. The parties agree that the Government may change its position if your client tries to obstruct justice as defined in U.S.S.G. § 3C1.1, or to deceive. withhold information from, or otherwise mislead the Court. the Probation Office, or the government on any issue relevant to the imposition of sentence. Your client understands and acknowledges that the Government's position about your client's base or adjusted offense level, like any other recommendation this Office makes at sentencing, cannot bind the Probation Office or the Court. neither of which are parties to this agreement. Your client understands and acknowledges that if the Court does not sentence your client in keeping with the terms of this paragraph. it shall not be grounds to withdraw the guilty plea.

(b)    Your client further agrees that he will not seek a downward departure from the otherwise applicable guideline range established by the Sentencing Guidelines, whether or not the government files a motion under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). The Government agrees that it will not seek an upward departure from the otherwise applicable guideline range established by the Sentencing Guidelines. Your client understands and acknowledges that the terms of this paragraph apply only to conduct that took place before he has pled guilty.

(c)    Should your client commit any conduct after the date of this agreement, which could form the basis for an increase in your client's base offense level or justify an upward departure. then this agreement permits the Government to seek an increase in your client's base offense level or move for an upward departure. based on that post-agreement conduct. Some examples of such conduct are: being arrested for committing a new crime. violating his conditions of release. obstructing justice. failing to appear for a Court proceeding. and giving false information to any law enforcement agent. probation officer. or Court.

5(a)    In view of the co-operation that your client agrees to provide and the expected investigation based on this co-operation. the government will agree to his release pending sentencing

for a limited time and solely to engage in investigative activity under the direction of law enforcement authorities. In particular, the government's view that your client may be properly released pending sentencing is premised entirely on the close supervision he will receive from police officers with whom he is co-operating. Your client and the Government agree that, under 18 U.S.C. § Section 3145(c), the fact of your client's co-operation constitutes "exceptional reasons" justifying your client's release pending sentence, but only for a limited time and solely to assist law enforcement authorities and the Government. The exceptional reasons justifying your client's release include: his promise to maintain daily contact with particular police officers; his promise and agreement not to engage in any criminal conduct; and his promise and agreement to abide by any and all release conditions imposed by the Court. Your client understands that the Court is not bound to accept the Government's recommendation on release pending sentencing and may impose whatever conditions it deems appropriate pending sentencing, to include ordering that your client be held without bond.

(b) In this regard, your client will be required to report daily to a supervising case officer, and he will also be required to be drug-tested regularly. At this time, the supervising case officers are Special Agents Tim Ervin and Tucker Vanderbunt of the Federal Bureau of Investigation. Defendant Evans understands that he must contact his supervising case agent, or an officer designated by that agent, as often as told to do so.

(c) Your client understands and agrees that, at any time, the Government can ask that your client be detained pending sentencing, and your client agrees not to oppose such a request for detention. Your client further agrees that ending your client's part in any investigation is committed to the Government's sole discretion and that this decision is not judicially reviewable. Your client also agrees that any violations of his release conditions, any misconduct, or any inability or failure on his part to continue co-operating with the Government can result in the Government filing an *ex parte* motion with the Court seeking a bench warrant for his arrest and an order that he be held without bond pending sentence. Your client specifically understands, for example, that not calling his supervising police officer or not complying with any direction that the Pre-Trial Services Agency gives him, or testing positive for drugs could result in the Government asking the Court to revoke your client's release. This plea agreement also permits a government attorney to move verbally in Court, *ex parte* or otherwise, for your client's release to be revoked, and does not require a written motion to be filed. Your client agrees that he will not oppose such a motion for revocation, and will not argue in favor of his release pending sentencing after the Government has moved to revoke it, whether that motion is made in writing or verbally. Your client understands and agrees that the United States does not waive its position on your client's dangerousness or risk of flight by agreeing to his release for a limited time solely to help investigative activity under the direction of law enforcement officers and the Government.

(d)     Your client acknowledges that he was serving a sentence for a 1994 conviction in the Superior Court of the District of Columbia in Cr. No. F-11765-94 for a crime in the nature of manslaughter from which he had been paroled at the time of his arrest on June 7, 2005. This Office has asked the U.S. Parole Commission through CSOSA to permit your client to co-operate with law enforcement and to be released from incarceration to do so. The Commission has authorized this.

-7-

Your client agrees to follow whatever conditions are set by the U.S. Parole Commission, independently of any set by the Court or this Office. Indeed, your client has signed an agreement spelling out these conditions. Your client understands that if he violates any condition set by the Parole Commission or set by CSOSA, he may be incarcerated as a result. If any decision by the U.S. Parole Commission – now that it has authorized your client's co-operation with this Office – makes it difficult or impossible for your client to continue to co-operate with law enforcement, this shall not be grounds for your client to withdraw his guilty plea in this case. Further, following your client's guilty plea, defendant understands that this Office does not promise or undertake to make any other representations on his behalf with the Parole Commission. As part of this agreement, this Office is not required to advise the Parole Commission of the nature and extent of your client's co-operation, although it may choose to do so in its discretion.

6.    Your client agrees to co-operate with the U.S. Government and associated law enforcement agencies:

(a)    Your client shall co-operate truthfully, completely, and forthrightly with this Office and other Federal, state, and local law enforcement authorities identified by this Office in any matter in which the Government deems the co-operation relevant. Your client acknowledges that co-operation may include, but will not necessarily be limited to, answering questions; providing sworn written statements; taking Government administered polygraph examination(s); and, participating in covert law enforcement activities.

(b)    Your client shall promptly turn over to the Government or other law enforcement authorities, or direct such law enforcement authorities to, any and all evidence of crime; all contraband and proceeds of crime; and all assets traceable to such proceeds of crime.

(c)    Your client shall submit a full and complete accounting of all financial assets, whether such assets are in your client's name or in the name of a third party. Your client agrees to the forfeiture to the U.S. Government of all items seized from him, or in his possession, or otherwise under his control, which either were used to commit or to facilitate commission of any felony narcotic offense, or which are the proceeds of any felony narcotic offense. Your client agrees to take whatever steps are needed to effect the forfeiture of these items, including not filing a claim, not opposing a judicial order of forfeiture, waiving available defenses, and signing consent forms.

(d)    Your client shall testify fully and truthfully before any Grand Jury anywhere in the United States, and at all trials of cases or other Court proceedings anywhere in the United States, at which your client's testimony may be deemed relevant by the Government.

(e)    Your client knows that nothing in this agreement allows your client to commit any criminal violation of local, state, or federal law during his co-operation with law enforcement authorities or at any time before the sentencing in this case. Committing a crime during your client's co-operation or at any time before sentencing is a breach of this plea agreement and will relieve the Government of all of its obligations under this agreement. However, your client acknowledges and agrees that such a breach of this agreement will not entitle your client to withdraw this guilty plea.

-8-

Your client further understands that, to establish a breach of this agreement, the Government need only prove by a preponderance of the evidence that your client committed a new crime.

(f)    If your client refuses in any way to co-operate fully, truthfully, completely, and forthrightly as directed by this Office and other Federal, state, and local law enforcement authorities identified by this Office in any and all matters in which the Government deems your client's assistance relevant he will breach this agreement. This will relieve the Government of its obligations under this agreement, including but not limited to, any consideration whether to file a departure motion under U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553(e). Your client agrees, however, that if he breaches this agreement in any way, it will not be grounds to withdraw his guilty plea nor will it otherwise relieve your client of his obligations under this agreement.

7.    Your client acknowledges and understands that during the co-operation outlined in this agreement, your client will be interviewed by law enforcement agents and that your client has the right to have defense counsel present during these interviews. After consultation with you, and with your concurrence, your client knowingly and voluntarily waives this right and agrees to meet with law enforcement agents outside of the presence of counsel. If at some future point you or your client desire to have counsel present during interviews by law enforcement agents, and you communicate this decision in writing to this Office, the Government will honor this request, and this change will have no effect on any other terms and conditions of this agreement.

8.    Your client knowingly and voluntarily waives or gives up all constitutional and statutory rights to a speedy trial and speedy sentence. Your client also agrees that the sentencing in this case may be delayed until his co-operation has been completed, as determined by the Government, so that the Court will have the benefit of all relevant information before a sentence is imposed. Your client understands that the Court will set the date for sentencing.

9.    Your client understands that this Office only has the sole discretion to decide if your client has provided substantial assistance under either U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e), as more fully explained later in this agreement. The decision to file with the Court a motion under either of these provisions is within this office's sole discretion. The Court has no authority nor power to review that decision, and your client agrees not to ask the Court to do so. In any event, your client specifically agrees not to seek a downward departure, without Government motion, based on any assistance he provides in the investigation or prosecution of other persons. Your client agrees that if this Office declines to file a substantial assistance departure motion, this is not grounds to withdraw his guilty plea nor shall it otherwise relieve him of any obligations under this agreement.

10.    Your client understands that the sentence in this case will be imposed in accordance with 18 U.S.C. §§ 3553(a) & 3553(c)-3553(f), upon consideration of the U.S. Sentencing Commission's Guidelines Manual. Your client further understands that the sentence to be imposed is a matter solely within the discretion of the Court. Your client acknowledges that the Court is not obligated to follow any recommendation of the Government at the time of sentencing.

11.    Even if the Government files a "departure motion" with the Court under U.S.S.G. §

5K1.1 and 18 U.S.C. 3553(e). your client understands that this Office reserves its full right of allocution for sentencing in this matter. Thus. the United States reserves its right to recommend a specific period of incarceration and fine up to the maximum sentence of incarceration and fine allowable by law. Your client further understands that the Government retains its full right of allocution in connection with any post-sentence motion that may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons. In addition, your client acknowledges that the Government is not obligated and does not intend to file any post-sentence downward departure motion in this case under Rule 35(b) of the Federal Rules of Criminal Procedure.

12.    Your client understands and agrees that your client will not be allowed to withdraw the guilty pleas entered under this agreement solely because of the harshness of the sentence imposed. Such a motion to withdraw shall constitute a breach of this agreement.

13.    Your client acknowledges discussing with you rules that ordinarily limit the admissibility of statements a defendant makes during plea discussions or plea proceedings if a guilty plea is later withdrawn. These are: Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Your client knowingly and voluntarily waives the rights under these rules. As a result of this waiver, if your client's guilty plea is ever withdrawn, your client understands and agrees that any statements made during your client's guilty plea or during your client's co-operation under this plea agreement will be admissible against your client for any purpose in any criminal or civil proceeding. Moreover, in the event your client's guilty plea is withdrawn, your client agrees that the Government will be free to use against your client in any criminal or civil proceeding any statements made during the course of any debriefing conducted in anticipation of this agreement. even if those debriefings were previously covered by an "off-the-record" agreement by the parties. Your client understands that your client's waiver of these rights is a key reason that the Government is willing to make this plea agreement as well as to sponsor your client's release pending sentencing in order to co-operate and. thus, possibly qualify for a less severe sentence.

14.    Your client further agrees to waive all rights. claims. or interest in any witness fee that your client may be eligible to receive under 28 U.S.C. § 1821 for appearing at any grand jury session. witness conference, or Court proceeding during the course of the co-operation under this agreement or any term of incarceration.

15.    Your client agrees that should he fail to perform specifically or to fulfill completely each and every one of his obligations under this plea agreement, then:

　　(a) the Government will be freed from its obligations under the agreement;
　　(b) your client will not be allowed to withdraw the guilty plea;
　　(c) your client shall be fully subject to criminal prosecution for any other crimes that he has committed or might commit. if any. including perjury and obstruction of justice: and.
　　(d) the Government will be free to use against your client, directly and indirectly, in any criminal or civil proceeding any of the information or materials your client provided under this agreement or during the course of debriefings conducted in

anticipation of this agreement, even if those debriefings previously were covered by an "off-the-record" agreement.

The Government's Obligations:

16(a)    After your client pleads guilty in this case, your client will not be charged with any non-violent criminal offense in violation of Federal or District of Columbia law that was committed within the District of Columbia before your client pled guilty and about which your client told this Office before the guilty plea. But, the United States expressly reserves its right to prosecute your client for any crime of violence, as defined in 18 U.S.C. § 16 or 22 D.C. Code § 3201 (1981 ed.), if your client committed or commits such a crime before or after the guilty plea in this case.

(b)    The Government agrees that your client's base offense level should be reduced three levels to reflect acceptance of responsibility. The Government will advise the probation officer preparing the Presentence Investigation (PSI) Report that your client should receive such a three-level reduction for acceptance of responsibility. (As noted above in Paragraph 4, the Government reserves the right to argue against this reduction in certain circumstances) Should the Court decide that a written motion is required for your client to receive the full, three-level reduction for acceptance of responsibility, we agree that the final, signed version of this plea letter may be treated as such a motion.

17.    This Office will bring to the Court's attention at the time of sentencing the nature and extent of your client's co-operation, or lack of it. This Office will inform the Departure Committee of the U.S. Attorney's Office for the District of Columbia of the nature and extent of your client's co-operation, or lack of it.

18.    In addition, if the Departure Guideline Committee, after evaluating the full nature and extent of your client's co-operation, or lack of it, determines that your client has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, then this Office will file a departure motion under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) to give your client a chance to persuade the Court to sentence him to less time in prison and a lesser fine than the Sentencing Guidelines and federal statutes mandate.

19.    The Government and your client agree that, under U.S.S.G. § 1B1.8, the Government may use against your client at sentencing in this case any self-incriminating information he provided under this agreement or during debriefings conducted in anticipation of this agreement, even if previously covered by an "off-the- record" agreement by the parties.

20.    The Government agrees, subject to the reservations in the rest of this paragraph, that so long as your client does not move to withdraw his guilty plea, and so long as he complies fully with each and every provision of this agreement, the Government will not use against him directly or indirectly, in any criminal or in any civil proceeding in federal court, any of the information or materials that he provided the Government during his co-operation under this agreement or during any debriefing conducted in anticipation of this agreement. But, the United States expressly reserves

its right to use at sentencing any self-incriminating information that your client provided in this case. as such use has otherwise been reserved in this agreement. Moreover, the United States also expressly reserves its right to use against your client in any criminal or civil proceeding, directly or indirectly, any information and materials that your client provided during your client's co-operation concerning crimes of violence, as defined in 18 U.S.C. § 16 or 22 D.C. Code § 3201 (1981 ed.).

21.    The Government agrees that, if your client asks, and, if this office in its sole discretion agrees it is needed to provide for your client's protection and security, then this Office will sponsor your client for acceptance into the Witness Security Program of the U.S. Department of Justice. It is understood, however, that the decision to accept your client into the Witness Security Program is at the sole discretion of the U.S. Department of Justice and not this Office. It is further understood that once accepted into the Program, your client's continued participation will be governed exclusively by the standard rules and regulations that the U.S. Department of Justice has issued to administer the Program.

General Conditions

22.    It is further agreed that the Government and your client shall request the Court to place under seal this plea agreement. The Government also may ask the Court to file under seal other documents or records in this case. Both parties agree that this is necessary in order to protect the personal safety of your client and the law enforcement agents/officers working your client. Both parties further agree that if the record is sealed in this matter, it shall remain under seal, subject to Court approval, until your client is sentenced or such other time as the Court might direct in response to a motion made by the United States.

23.    Regardless of what we have agreed to in this letter regarding the position the Government will take on any issue of law or fact, this Office reserves its right to defend in a collateral attack in the trial Court or on appeal any ruling made by the trial Court in this case. *__This agreement permits the Government to defend at any time in any Court any ruling made by the trial Court in this case, even if we initially have agreed not to ask the Court to make that ruling__*.

24.    This agreement only binds the U.S. Attorney's Office for the District of Columbia. It does not bind any other U.S. Attorney's Office or any other office or agency of the U.S. Government. including. but not limited to, the U.S. Department of Justice's Tax Division, the U.S. Department of the Treasury's Internal Revenue Service; or any state or local prosecutor. These individuals and agencies remain free to prosecute your client for any offense(s) committed within their respective jurisdictions.

25.    This letter sets forth the entire understanding between the parties and constitutes the complete plea agreement between your client and this Office. This agreement supersedes all prior understandings, promises, agreements, or conditions, if any, between this Office and your client. There are no other agreements, promises, understandings or undertakings between your client. Your client understands and acknowledges that there can be no valid addition or alteration to this agreement unless the modification is made on the record in open Court or made in a writing signed

by all of the parties.

Sincerely yours,

KENNETH L. WAINSTEIN,
UNITED STATES ATTORNEY

BY: William J. O'Malley, and Barry Wiegand,
Assistant U.S. Attorneys
(202) 305-1749; (202) 514-7315 (o)
(202) 514-8707 (fax)
Bill.J.O'Malley@USDoJ.Gov
William.B.Wiegand@USDoJ.Gov

-13-

## DEFENDANT'S ACCEPTANCE

I have read this letter containing the plea agreement and have discussed it fully with my attorneys. either Ms. Mary Petras, Esq., Assistant Federal Public Defender. who has explained the meaning of the entire agreement to me. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement. I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it.

Date: 8-18-05

Michael Westley Evans
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the twelve pages of this plea agreement, reviewed them with my client. and discussed its provisions with him fully. These pages accurately and completely set forth the entire plea agreement. I concur in my client's desire to plead guilty as set forth in this agreement.

Date: 8-18-05

Ms. Mary Petras, Esq.
Attorney for Defendant Michael Westley Evans

-14-