IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :

      v.               :         Cr. No. 05-249 (JR)
                                      **UNDER SEAL**

MICHAEL W. EVANS :

**DEFENDANT'S SENTENCING MEMORANDUM**

Mr. Michael W. Evans, the defendant, will appear before this Honorable Court for sentencing on December 8, 2006. Through undersigned counsel, Mr. Evans respectfully submits the following for the Court's consideration in determining an appropriate sentence.

Factual Background

Mr. Evans is a 39-year-old man who recognizes that he has committed a serious offense for which the Court must now impose a sentence. However, over the last eighteen months since his arrest in this case, Mr. Evans has made dramatic changes in his life and has affirmatively demonstrated his intent to live a law-abiding, productive life, supporting his family.

Mr. Evans grew up in Washington, D.C., where he lived with his parents and siblings. He began smoking marijuana and PCP when he was just sixteen years old. He went to Eastern High School, but dropped out in the eleventh grade after being incarcerated for distribution of cocaine. By the time he was twenty years old he was smoking crack cocaine and PCP daily.

As a direct result of his drug addiction, by the time he was twenty-one years old, Mr. Evans had been convicted of possession of a controlled substance, distribution of cocaine

and attempted possession of cocaine.[1]  In 1989, after violating his probation in the distribution of cocaine case by testing positive for cocaine, Mr. Evans asked to be incarcerated rather than risk getting into further trouble on probation.  He was sentenced to an indeterminate period of incarceration of up to five years.  While incarcerated, he tried to take advantage of the limited programs that were available through the Department of Corrections.  He had hoped to control his drug addiction upon his release, but was unable to do so.  In 1992, he was convicted of reckless endangerment following a domestic dispute that involved a BB-gun and was sentenced to three days incarceration and a three year period of unsupervised probation.

In 1994, a child who was in Mr. Evans's care died.  According to the medical examiner's report, the child's injury was consistent with shaken baby syndrome.  Although Mr. Evans is to this day uncertain as to exactly what occurred, he knew he was responsible for the child's death -- while the child was in his care, he had gotten high and blacked out.  At the time of his arrest, he was suicidal.  For a period of time, he was committed to St. Elizabeth's hospital and was then held on the psychiatric ward at the D.C. Jail.[2]  Several months later, he pled guilty to involuntary manslaughter and was sentenced to a five to fifteen year period of incarceration.

After he was paroled in April 2003, Mr. Evans obtained a job working as a barber at a shop called Father and Family, and then for Cutz on the Hill Barber Shop.  Although he was able to maintain this employment, Mr. Evans was again unable to control his addiction.  Almost a

---

[1]The Presentence Investigation Report incorrectly lists the attempted possession of cocaine offense twice in paragraphs 29 and 30.

[2]During his interview with the probation officer, Mr. Evans inadvertently did not disclose this information when discussing mental health issues.  For this reason, the information is not included in the report.

year after his release he began using heroin and found himself not only psychologically addicted but also physically addicted. His life again spun out of control and he was again selling drugs.

Mr. Evans was arrested in this matter on June 7, 2005. Immediately after his arrest, he recognized that he needed to make significant changes in his life and that to do so he would have to sever all ties with the people with whom he had been associating. Mr. Evans recognized that the best way to do that was to cooperate with the government. He immediately agreed to speak with law enforcement officers and began cooperating.

After his first appearance in Court, Mr. Evans, through counsel, began negotiating a cooperation plea agreement with the government. As the government explains in its Motion for Departure from the Guidelines Sentence, arranging such an agreement took some time because Mr. Evans was on parole at the time of his arrest. After the government obtained the parole authorities' permission for Mr. Evans to cooperation, an agreement was reached. During this time, Mr. Evans was held at the D.C. Jail and was able to physically detox from heroin.

On June 28, 2005, the government filed a two count information, charging Mr. Evans with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846, and one count of unlawful possession with intent to distribute cocaine base within 1000 feet of a school, in violation of 21 U.S.C. § 860(a). Pursuant to the plea agreement, Mr. Evans pled guilty to these offenses on August 18, 2005, and the Court released him to continue cooperating with the government.

Since his release eighteen months ago, Mr. Evans not only has maintained employment and controlled his drug addiction, he has successfully cooperated with government agents. Undersigned counsel has spoken with Mr. Evans's parole officer, Keith Cromer. Mr. Cromer

reports that Mr. Evans has been doing extremely well. Mr. Cromer confirms that Mr. Evans has maintained employment, reported as requested and consistently tested negative for illegal substances. Mr. Cromer believes that Mr. Evans would continue to do well if continued on supervised release.

In cooperation with the government over this time period, Mr. Evans participated in five undercover video-taped drug purchases and "significantly advanced" the government's investigation of high-level heroin traffickers. See Government's Motion for Departure from Guidelines Sentence. After completing his work in the heroin investigation, at the request of the agents, Mr. Evans participated in the investigation of several individuals known to distribute cocaine base, making several controlled purchases. Mr. Evans also helped the government set up a controlled purchase of PCP and a handgun.

As does any individual who agrees to participate in undercover police work, Mr. Evans placed himself at great risk during these investigations. Unfortunately, the risks for Mr. Evans became particularly grave. During the last controlled purchase in which he participated, the targets of the government's investigation attempted to rob Mr. Evans. The targets had agreed to sell Mr. Evans four ounces of PCP and a handgun. When they met, the initial target of the investigation place a substance that later turned out not to be PCP in the glove compartment of the undercover car driven by Mr. Evans. Mr. Evans gave the target a portion of the money the agents had given him to give to the target. The target then indicated that he would return with the handgun. When he returned, the target took the remaining money from Mr. Evans and told Mr. Evans that the man who was with him would give Mr. Evans the handgun. That man, however, entered the undercover car, refused to give Mr. Evans the gun, demanded to know if

Mr. Evans had any more money and then searched Mr. Evans at gun point. See Attachment A (Affidavit in Support of Arrest Warrants). These individuals subsequently were charged with assault with intent to commit robbery while armed and related offenses. Mr. Evans testified before the grand jury, and the charged individuals pled guilty in Superior Court. However, as a result of that matter, Mr. Evans's identity as a cooperator was revealed.

Mr. Evans was then in great danger. The government had to relocate him and his family, and Mr. Evans could no longer actively assist the government in their investigations. Since that time, Mr. Evans has been fearful and does not enter the District of Columbia unless necessary to appear in court or meet with his parole officer. Mr. Evans has heard rumors of individuals looking for him, seeking revenge, and continues to fear retaliation.

When he was relocated, Mr. Evans had to relinquish the job he had held for three years at Cutz on the Hill Barber Shop. He quickly found a job working as a driver for Cimarron Coach, and then obtained employment as a laborer for Loyal. In September 2006, he obtained a higher paying job with Protech Pest Control, working as a service technician. His employer trained him, and he obtained a license through the Virginia Department of Agriculture. He works full-time and earns $600 a week. He now lives quietly outside of the District of Columbia area with his wife and two step-children.

## Argument

As set forth in the Presentence Investigation Report, the applicable sentencing range under the United States Sentencing Guidelines ("Guidelines") is 262 to 327 months. The government, however, in recognition of Mr. Evans' cooperation, has filed a Motion for Departure from Guidelines Sentence. Moreover, although the Court must consider the Guidelines when

determining an appropriate sentence, the Court must do so along with the other factors set forth in 18 U.S.C. § 3553(a).  United States v. Booker, 543 U.S. 220 (2005).  These factors include: "The nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a).  Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Following Booker, Courts need not justify sentences outside the applicable Guidelines range by citing an applicable Guidelines grounds for departure or factors that take the case outside the "heartland."  Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in § 3553, the Court may disagree with the range proposed by the Guidelines and exercise discretion to impose a sentence outside the range.

After considering all of the factors set forth in § 3553(a), the Court must impose a sentence "that reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s] the defendant with needed educational or vocational training and medical care."  Id. at 765 (citing 18 U.S.C. § 3553(a)(2)).  Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable,

> recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]."  18 U.S.C. § 3553(a) (emphasis added).

When considering the Guidelines, the Court should consider the government's motion for a departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).  When determining the appropriate reduction for substantial assistance, the Guidelines provide that the Court should consider:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; [and]
>
> (5) the timeliness of defendant's assistance.

U.S.S.G. § 5K1.1.

Mr. Evans's cooperation was immediate and timely.  He provided all he could provide without qualification or exception.  He was truthful, complete and reliable in every respect.  Moreover, he placed himself at great risk, and due to the circumstances that arose, he and his family continue to be at risk.  Every factor listed in § 5K1.1 weighs in favor of a substantial reduction.

A review of the other factors set forth in § 3553 also demonstrates that a sentence substantially below the Guidelines range is appropriate. First, when considering the nature and circumstances of the offense, the Court should consider that Mr. Evans's addiction drove his conduct. More importantly, the Court should consider the substantial progress Mr. Evans has made over the last eighteen months in establishing himself as a law-abiding, productive citizen. He has severed all ties to his past and built a respectable life for himself and his family.

## Conclusion

For the foregoing reasons and such other reasons as may be presented at the sentencing hearing in this matter, Mr. Evans respectfully requests that the Court impose a sentence that does not include an additional period of incarceration.

Respectfully submitted,

/s/
_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2006, the foregoing Defendant's Sentencing Memorandum was served by hand-delivery to a box in the Clerk's Office designated for the United States Attorney's Office upon William O'Malley, Assistant United States Attorney.

/s/
_____
MARY MANNING PETRAS