Attachment A



## AFFIDAVIT IN SUPPORT OF ARREST WARRANTS

I.  Identity and Background of Affiant

I, Tucker G. Vanderbunt, Special Agent (SA) with the Federal Bureau of Investigation (FBI), Washington Field Office (WFO), Washington, D.C., (hereinafter the "affiant") being duly sworn, depose and state as follows:

1.  I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

I have been a Special Agent (SA) with the FBI since 2002. I am currently assigned to Squad CR-3, which is responsible for conducting investigations which target large scale narcotics trafficking organizations. From 2002 until September, 2003, I was assigned to a counter-terrorism squad. From 1995 until 2002, I was employed as a law enforcement officer of the State of Georgia, during which time I investigated federal, state, and local narcotics violations which have led to the arrest and conviction of numerous narcotics distributors. Since 1995, I have received training and experience in interview and interrogation techniques, arrest procedures, search and seizure, search warrant applications, narcotics, narcotics investigations, white collar crimes, white collar crime investigations, and various other crimes. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting



short and long-term undercover operations, including reverse undercover drug operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; requesting, collecting, and analyzing billing records; conducting court-authorized electronic surveillance; and preparing and executing search warrants, which have led to substantial seizures of narcotics, firearms and other contraband.

II.   Identity of Conspirators

2.   Your affiant asserts the facts contained within this affidavit establish probable cause to believe both of the following individuals have violated District of Columbia law; specifically, on January 19, 2006, they conspired to commit Assault With Intent to Rob While Armed:

1.   NAME:   JAMES LONNELL VENABLE, aka "FAT BOY"
     DOB:    12/08/71
     PDID:   388-141
     SSN:    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; 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

2.   NAME:   ANTONIO LEWIS VENABLE, aka "BLACK"
     DOB:    09/08/75
     PDID:   444-503
     SSN:    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; 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

III.   Cooperating Witness Information

3.   Assisting in this investigation was a reliable and confidential cooperating witness (hereinafter referred to as "CW"), who has provided truthful information on numerous occasions about significant drug traffickers and has never provided any false information. The CW indicated it was in a position to purchase large quantities of phencyclidine (PCP) and firearms from a

narcotics distributor in Washington, D.C. (WDC) named LONNELL VENABLE [later fully identified by the FBI as JAMES LONNELL VENABLE]. VENABLE told CW he would sell PCP at a price of $500 per ounce. VENABLE also told CW he had four Glock .40 caliber pistols for sale at a price of $600 each. VENABLE uses cellular telephone number 202-246-6669. The CW has seen VENABLE driving a gray Mazda 626 with DC license plate AV 8061 and a green Volvo station wagon with Maryland temporary tag 26912T. On January 13, 2006, the CW met with VENABLE, who was driving the Volvo station wagon. At that time, VENABLE showed CW one of the Glock .40 caliber pistols he had for sale.

IV. The Investigation

7. On January 17, 2006, FBI agents observed the green Volvo station wagon with Maryland temporary tag 26912T parked in front of 910 Marcy Avenue, Oxon Hill, Maryland. The vehicle had a for sale sign with the telephone number 202-246-6669, which is the cellular telephone number of JAMES VENABLE.

8. On January 18, 2006, the CW placed a consensually recorded telephone call to JAMES VENABLE at 202-246-6669. During the call, they agreed to meet the next day so that VENABLE could sell the CW four ounces of PCP and a pistol for $2,600.

9. On the morning of January 19, 2006, the CW placed another consensually recorded telephone call to JAMES VENABLE at 202-246-6669. They agreed to meet in the parking lot of the Greater Southeast Hospital on Southern Avenue, S.E., WDC.

10. The CW was then provided with an undercover (UC) vehicle with interior audio and video recording equipment and $2,600. The CW was followed by FBI agents from the staging area



to the parking lot of Greater Southeast Hospital. At approximately 11:47 a.m., JAMES VENABLE arrived in the hospital parking lot driving the gray Mazda 626 with DC license plate AV 8061. He exited that vehicle and entered the UC vehicle driven by the CW. A review of the interior audio and video revealed that as JAMES VENABLE entered the UC vehicle, he reached into his pocket as he said "you said you want four, right?" JAMES VENABLE then placed a white bag in the glove box of the UC vehicle. JAMES VENABLE then said he did not realize the CW also wanted to purchase the gun at the same time. JAMES VENABLE then said "I'm gonna run and get that" [meaning the pistol]. The CW then showed JAMES VENABLE the entire $2,600. The CW gave VENABLE $2,000 and held onto the remaining $600. VENABLE was observed counting the $2,000. VENABLE said it would not take long for him to return to the same location with the pistol. VENABLE then exited the UC vehicle and left the area in the gray Mazda 626.

11. At approximately 12:00 p.m., FBI surveillance observed JAMES VENABLE arrive at 910 Marcy Avenue, Oxon Hill, Maryland, driving the gray Mazda 626. He parked the vehicle in front, and an unknown black female exited the vehicle and entered 910 Marcy Avenue. The green Volvo station wagon was also observed parked in front of 910 Marcy Avenue. A few minutes after the female entered the apartment building, JAMES VENABLE drove out of the area alone.

12. At approximately 12:28 p.m., JAMES VENABLE called the CW and asked the CW to move out of the hospital parking lot and meet VENABLE right outside the lot on 13th Street, S.E., WDC. The CW drove out of the hospital lot and stopped on 13th Street. At approximately 12:31 p.m., JAMES VENABLE entered the UC vehicle again. The gray Mazda 626 was observed by FBI surveillance parked on 13th Street, S.E. The CW noted there was another male seated in VENABLE's Mazda 626. As a result, the CW said to JAMES VENABLE "whoever it is. . .I ain't

4

even gonna ask. . .he must be cool if you got him with you." VENABLE responded "oh, yeah."

JAMES VENABLE then took the remaining $600 and exited the UC vehicle, saying the CW would receive the gun from the other man.

13. Approximately one minute after JAMES VENABLE exited the UC vehicle, ANTONIO VENABLE entered the UC vehicle. ANTONIO VENABLE pulled out a semi-automatic pistol and asked if CW liked it. The CW said yes, then said "put it in the glove compartment." ANTONIO VENABLE responded "no, I'm going to keep this." ANTONIO VENABLE then said "you got any more money on you?" The CW said no. ANTONIO VENABLE then said "let me see." The CW could then be observed putting his/her hands up while VENABLE leaned over and searched through the CW's pockets. ANTONIO VENABLE held the pistol in his right hand while he used his left hand to search the CW. After searching the CW's pockets, ANTONIO VENABLE exited the vehicle, still holding the pistol. ANTONIO VENABLE got back in the Mazda 626 with JAMES VENABLE, and they drove out of the area.

14. The substance JAMES VENABLE placed in the glove box was seized by the FBI. Inside the bag were four small clear bottles each containing approximately an ounce of fluid. Field testing of those substances were negative for the presence of PCP. Nor did the liquid appear to be PCP or have the tell-tale odor associated with liquid PCP.

15. The video images of the two men who entered the UC vehicle were compared with PDID photos for JAMES VENABLE and ANTONIO VENABLE. That comparison determined that the man who entered the UC vehicle first is identical to JAMES VENABLE, and the man who entered the UC vehicle last is identical to ANTONIO VENABLE.

V. Conclusion

40. Based on the foregoing, your affiant believes probable cause exists that JAMES LONNELL VENABLE, also known as "FAT BOY," and ANTONIO LEWIS VENABLE, also known as "BLACK," have conspired to commit Assault With Intent to Rob While Armed.

_____  
Assistant United States Attorney

_____  
TUCKER G. VANDERBUNT, Special Agent  
Federal Bureau of Investigation

Sworn and subscribed to before me this 24th day of January 2006

_____  
Judge of Superior Court  
of the District of Columbia